**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| -------------------------------------------------- : | |
| RYAN O'DELL, : | |
| : | |
| Plaintiff, : | Civil Action No. 22-cv-10071 |
| : | |
| v. : | **COMPLAINT FOR VIOLATIONS OF** |
| : | **SECTIONS 14(a) AND 20(a) OF THE** |
| USERTESTING, INC., ANDREW : | **SECURITIES EXCHANGE ACT OF** |
| BRACCIA, ANDREW MACMILLAN, : | **1934** |
| CYNTHIA RUSSO, DARRELL BENATAR, : | |
| ALEXANDER WONG, TATYANA : | **JURY TRIAL DEMANDED** |
| MAMUT, and SHANNON NASH, : | |
| : | |
| Defendants. : | |
| -------------------------------------------------- : | |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against UserTesting, Inc. ("UserTesting or the "Company") and the members UserTesting's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of UserTesting by affiliates of Thoma Bravo L.P., a private equity firm ("Thoma Bravo").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on November 23, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Thunder Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Thunder Holdings, LLC ("Parent"), will merge with and into UserTesting with UserTesting surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on October 26, 2022 (the "Merger Agreement"), each UserTesting stockholder will receive $7.50 in cash (the "Merger Consideration") for each UserTesting share owned. Parent and Merger Sub are entities affiliated with Thoma Bravo Discover Fund III, L.P. and Thoma Bravo Discover Fund IV ("Thoma Bravo Funds") and are managed by Thoma Bravo. Parent, Merger Sub, and Thoma Bravo Funds are each affiliates of Thoma Bravo.

3.      As discussed below, Defendants have asked UserTesting's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to UserTesting's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of UserTesting stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Andrew Braccia has served as a member of the Board since July 2016.

11.     Individual Defendant Andrew MacMillan has served as a member of the Board since May 2018 and is the Board's Chairperson, and the Company's President and Chief Executive Officer.

12.     Individual Defendant Cynthia Russo has served as a member of the Board since February 2021.

13.     Individual Defendant Darrell Benatar is one of the Company's co-founders and has served as a member of the Board since June 2007.

14.     Individual Defendant Alexander Wong has served as a member of the Board since January 2016.

15.     Individual Defendant Tatyana Mamut has served as a member of the Board since June 2020.

16.     Individual Defendant Shannon Nash has served as a member of the Board since February 2021.

17.     Defendant UserTesting is a Delaware corporation and maintains its principal offices at 144 Townsend Street, San Francisco, California 94107.  The Company's stock trades on the New York Stock Exchange under the symbol "USER."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

20.     UserTesting engages in the operation of a software-as-a-service (SaaS) platform that enables organizations to know experiences of people as they engage with products, designs, apps, processes, concepts, or brands in the United States, the United Kingdom, and internationally. Its platform captures customer perspectives from targeted audiences who share their thoughts for digital, real-world, or omnichannel experiences. The Company sells through a direct selling motion and field sales representatives; and inside sales organization that sells to mid-market, and small and medium-sized business customers. It serves customers in B2B and B2C technology, retail and

e-commerce, consumer products, automotive, financial services, travel and hospitality, media

entertainment, public, gaming, education, healthcare, transportation, food and beverage,

manufacturing, and professional service industries. The Company was incorporated in 2007 and is

headquartered in San Francisco, California.

21.     On October 27, 2022, the Company announced the Proposed Transaction:

> **SAN FRANCISCO—**UserTesting, Inc. (NYSE: USER), a leader
> in video-based human insight, today announced that it has entered
> into a definitive agreement to be acquired by Thoma Bravo, a
> leading software investment firm, and Sunstone Partners for $7.50
> per share, in an all-cash transaction valued at approximately $1.3
> billion. The offer represents a premium of approximately 94% over
> UserTesting's closing stock price on October 26, 2022 and a
> premium of approximately 97% over the volume weighted average
> price (VWAP) of UserTesting's shares for the 30 trading days ended
> October 26, 2022.
>
> Following the closing of the transaction, Thoma Bravo and Sunstone
> Partners intend to combine UserTesting and UserZoom, which
> Thoma Bravo acquired majority control of in April 2022.
> UserTesting's CEO, Andy MacMillan, will lead the combined
> company. Additionally, the combined company will benefit from
> the operating capabilities, capital support, and industry expertise of
> Thoma Bravo and Sunstone Partners.
>
> The companies' complementary offerings will create a powerful
> end-to-end solution in the customer experience space—helping
> more organizations around the globe innovate, drive revenue,
> manage risk, and deliver exceptional customer experiences.
> UserZoom is a user experience (UX) insights company empowering
> its customers with tools to conduct high quality research and
> increase research productivity. By combining UserZoom's multi-
> method research capabilities, proprietary benchmarking
> methodology, and research repository with UserTesting's
> proprietary contributor network and enterprise-scale experience
> testing platform, customers will be able to leverage the strength of
> both solutions to build better product, customer, employee, and
> brand experiences.
>
> "We believe the combination of UserTesting and UserZoom will
> unlock tremendous value for our customers by further integrating
> and expanding the suite of research methods, testing types, and

measurement options available—all while making the voice of the customer and human insight more accessible across an organization and easily integrated into their processes and workflows," said Andy MacMillan, CEO of UserTesting. "We are pleased to partner with Thoma Bravo and Sunstone Partners to build upon our award winning Human Insight Platform to further innovate in the CX space and continue to serve a growing number of teams and use cases. We are confident that this transaction—joining two complementary players in the customer experience space to form a new private company—offers the most compelling value creation for all of our stakeholders, and is a testament to the value of human insight, the UserTesting platform, our talented team, and loyal customer base."

"We live in a digital experience-first world, one where the quality of the user and customer experience will distinguish the winners from the losers. The combination of UserTesting and UserZoom's solutions will help democratize experience insights to enable companies to make the right decisions, be innovative, and ultimately deliver experiences their customers love," said Alfonso de la Nuez, Co-Founder and Chief Visionary Officer of UserZoom.

"We are excited to bring together the complementary expertise of UserTesting and UserZoom to create a leading, integrated solution that delivers real-time, data-driven feedback to organizations globally," said A.J. Rohde, a Senior Partner at Thoma Bravo. "Our acquisition of UserTesting is a testament to our belief that customer experience is mission critical to organizations, and the combined company will be well-positioned to further market expansion, accelerate innovation, and provide even greater insights to its customers. We look forward to leveraging the deep experience we have cultivated in the customer experience and user experience space to help the combined company capture the tremendous growth opportunities ahead."

**Transaction Details**

The transaction, which was unanimously approved by the UserTesting board of directors, is currently expected to close in the first half of 2023, subject to customary closing conditions, including approval by UserTesting's stockholders and the receipt of required regulatory approvals. The UserTesting board of directors unanimously recommends that UserTesting stockholders vote in favor of the transaction at the Special Meeting of Stockholders to be called in connection with the transaction. Upon completion of the transaction, UserTesting's common stock will no longer be publicly listed and UserTesting will become a privately held company.

The agreement includes a "go-shop" period expiring at 11:59 p.m. Pacific time on December 10, 2022, which allows the UserTesting board of directors and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. UserTesting's board of directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and UserTesting does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

**Third Quarter 2022 Financial Results**

UserTesting will announce its financial results for its third quarter today, October 27, 2022. The news release will be available on the Investor Relations section of the company's website. In light of the announced transaction with Thoma Bravo and Sunstone Partners, UserTesting will not conduct an earnings conference call.

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor and Fenwick & West LLP is serving as legal counsel to UserTesting. Kirkland & Ellis LLP is serving as legal counsel to Thoma Bravo and Goodwin Procter LLP is serving as legal counsel to Sunstone Partners.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that UserTesting's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On November 23, 2022, UserTesting filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by UserTesting management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that UserTesting management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Unlevered Free Cash Flows, Non-GAAP Net Income, and Calculated Billings, but fails to provide line items used to

calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected by Morgan Stanley for the analysis.

30.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for UserTesting; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 3.0% to 4.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 12.5% to 14.5%; (iv) the Company's weighted average cost of capital; (v) UserTesting's net cash; (vi) the net present value of net operating losses; and (vii) the number of fully diluted shares of UserTesting common stock outstanding as of October 25, 2022.

31.     With respect to Morgan Stanley's *Precedent Transactions Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

32.     With respect to Morgan Stanley's *Illustrative Precedent Transaction Premiums* analysis, the Proxy Statement fails to disclose the transactions reviewed and the premia for each transaction.

33.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose the research analysts observed and the price targets published by those research analysts.

34.     With respect to Morgan Stanley's *Illustrative Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the basis for Morgan Stanley's assumptions, including: (a) target range of annualized internal rates of return for the financial sponsor of 20% to 22.5%; (b) a 21.4%

debt-to-capitalization ratio; (c) a range from 3.0x to 4.0x applied to the estimated calendar year 2027 next twelve month revenue exit multiples; and (d) no synergies.

35.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.    Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of UserTesting within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of UserTesting, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of UserTesting, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of UserTesting, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 28, 2022                               **MELWANI & CHAN LLP**

                                        By:   */s/ Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)
                                              1180 Avenue of the Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*